UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| FRANK GUILLORY, SR. | CIVIL ACTION NO. 99-1352 |
| VERSUS | JUDGE HAIK |
| WARDEN, BURL CAIN | MAGISTRATE JUDGE METHVIN |

### REPORT AND RECOMMENDATION

By order dated April 3, 2003, the United States Court of Appeals for the Fifth Circuit remanded Frank Guillory, Sr.'s habeas claim alleging that he was denied due process and equal protection due to the method of selection of the grand jury foreperson in St. Landry Parish "for consideration in light of [the] opinion in Peterson v. Cain, 302 F.3d 508, 513-14 (5th Cir. 2002)."[1] For the following reasons, it is recommended that petitioner's claims be **DENIED AND DISMISSED WITH PREJUDICE.**

*Background*

Petitioner was convicted in 1994 in St. Landry Parish, Louisiana, on two counts of first degree murder and was sentenced to two concurrent life sentences. The facts of the crime were set forth in the opinion of the state appellate court:

> Guillory is charged with killing his wife, Judith Joubert Guillory, and her nine-year old son, Tommy Latiolais. The shooting occurred as the victims sat in Ms. Guillory's vehicle after the defendant had been ordered by a deputy sheriff to leave the residence.
>
> * * * Guillory approached his wife as she was preparing to take herself and her children away from the home Guillory had previously been ordered to leave by a deputy sheriff. He then shot Judith not once but five times as she sat in the close confines of her vehicle with her children at her side. By his own admission,

---

[1] Rec. Doc. 43.

defendant was in close proximity to the vehicle at the time of the shooting. In fact, he claims to have been reaching into the vehicle.

State v. Guillory, 670 So.2d 301, 303, 305 (La. App. 3d Cir. 1996). The victim's nine-year old son and daughter were also in the vehicle at the time of their mother's murder, and the nine-year old boy was killed.

### *Findings and Conclusions*

#### *Procedural History of Petitioner's §2254 Petition*[2]

On July 27, 1999, Guillory filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2254, asserting twelve grounds for relief. The undersigned recommended dismissal of the claims on both procedural and substantive grounds. The district judge adopted the findings and recommendations and dismissed the claims.[3]

With respect to petitioner's claims alleging discrimination in the selection of the grand jury foreperson[4], the undersigned recommended dismissal on grounds that the 1998 Supreme Court case which held that a white defendant had standing to assert such a claim, Campbell v.

---

[2] The full procedural history of petitioner's state appeal and post-conviction relief process is set forth in the undersigned's June 20, 2001 Report and Recommendation (Rec. Doc. 36). Only the portions relevant to this report are outlined herein.

[3] On March 22, 2000, the undersigned recommended dismissal of Grounds 10, 11, & 12 as procedurally defaulted (Rec. Doc. 6). The district judge adopted these findings and recommendation, and entered judgment dismissing the claims on May 5, 2000 (Rec. Doc. 12). Further briefing was ordered regarding the other nine claims, and on June 20, 2001, the undersigned issued a report recommending their dismissal on the merits (Rec. Doc. 36). The district judge again adopted the recommendation and dismissed the claims on July 26, 2001 (Rec. Doc. 38).

[4] In the instant habeas petition, Guillory raised this issue in Grounds 2, 3, and 7 as follows: (2) petitioner was denied due process and equal protection as a result of discrimination in the selection of the grand jury foreman; (3) Louisiana Code of Criminal Procedure article 413(b) regarding the grand jury foreman selection process is unconstitutional; and (7) petitioner received ineffective assistance of counsel due to counsel's failure to investigate the manner of appointment of the grand jury foreman or the constitutionality of article 413(b), and due to counsel's failure to object to the alleged discrimination in the selection of the grand jury foreman, among other failures.

Louisiana,[5] was, in part, a "new rule" of constitutional law which could not be applied retroactively under Teague v. Lane.[6]

On December 3, 2001, the Fifth Circuit granted a Certificate of Appealability (COA) on the issue of whether Campbell announced a new rule of constitutional law.[7] On April 3, 2003, the Fifth Circuit remanded the case, finding that this court's decision was erroneous in light of the subsequently-decided case of Peterson v. Cain, 302 F.3d 508, 515 (5th Cir.2002), *cert. denied*, 537 U.S. 1118, 123 S.Ct. 886, 154 L.Ed.2d 796 (2003). Peterson held that the rule in Campbell was not a new rule of constitutional law, because it was derived from earlier decisions in Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), Hobby v. United States, 468 U.S. 339, 104 S.Ct. 3093, 82 L.Ed.2d 260 (1984), Rose v. Mitchell, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), and Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) (plurality opinion).[8] Peterson, 302 F.3d at 512-15. Since Campbell was not a new rule of law, the Fifth Circuit held that Teague did not bar Guillory's due process and equal protection claims.

## *Procedural Default Doctrine*

In the report issued June 20, 2001, the undersigned concluded that the procedural default doctrine should not be applied to bar review of petitioner's grand jury foreperson claim on the

---

[5] 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998).

[6] 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

[7] Rec. Doc. 42. The Fifth Circuit denied a COA on the other issues raised by Guillory.

[8] In fact, this court made the same finding: that Campbell did not announce a new rule of law as to the issue of discrimination in the selection of grand jury forepersons. This court found only that Campbell's holding with respect to *standing* was new. *See* Report and Recommendation, June 20, 2001 (Rec. Doc. 36, p. 15).

merits. The claim was then analyzed under the Teague doctrine.[9] Upon further review, it is clear that important issues of exhaustion and procedural default have not been fully addressed: that is, petitioner raised this claim on appeal but then failed to exhaust his appellate remedies by not seeking writs in the Louisiana Supreme Court. Later, when petitioner attempted to re-assert this claim in his two post-conviction applications, the state courts applied a procedural bar. Consequently, petitioner never fully and fairly presented this issue to the Louisiana Supreme Court. Such a failure clearly invokes the doctrine of procedural default for purposes of this §2254 petition.

In order to "protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings," federal courts recognize two doctrines barring federal review of certain claims: exhaustion and procedural default. *See* Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 2555 (1991) *citing* Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 490-491 [93 S.Ct. 1123, 1127-1128, 35 L.Ed.2d 443] (1973) (discussing exhaustion). Both doctrines are grounded in the concept of comity between the state and federal systems:

> Under our federal system, the federal and state 'courts [are] equally bound to guard and protect rights secured by the Constitution.' *Ex parte Royall*, 117 U.S., at 251 [6 S.Ct., at 740]. Because 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation,' federal courts apply the doctrine of comity, which 'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.' *Darr v. Burford*, 339 U.S. 200, 204 [70 S.Ct. 587, 590, 94 L.Ed. 761] (1950)." *Id.*, 455 U.S., at 518, 102 S.Ct., at 1203.

---

[9] Rec. Doc. 36.

Coleman v. Thompson, 501 U.S. at 731.

Thus, the scope of federal habeas relief is limited by the intertwined doctrines of exhaustion and procedural default. Title 28 U.S.C. § 2254(b)(1) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or ...

The statute codifies the jurisprudential "exhaustion doctrine" long recognized by the federal courts. This doctrine recognizes that, "[a] fundamental prerequisite to federal *habeas* relief under §2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir.1998). Exhaustion requires state prisoners to give the state courts "a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

A prisoner theoretically can avoid the exhaustion requirement by letting the time run on his state remedies. This failure to proceed would meet the technical requirements for exhaustion because there would no longer be any state remedies "available" to address the petitioner's federal claims in the state courts. See 28 U.S.C. § 2254(b)(1)(A); Coleman, 501 U.S. at 731-732; Engle v. Isaac, 456 U.S. 107, 125-126, n. 28, 102 S.Ct. 1558, 1570, n. 28, 71 L.Ed.2d 783 (1982).

In order to protect the integrity of the federal exhaustion rule, the Supreme Court has crafted the doctrine of procedural default. O'Sullivan, 526 U. S. at 853 (dissent of Justice

Stevens). As Justice Stevens explained, the doctrine requires courts to determine not only *whether* a claim has been exhausted, but also *how* it was exhausted:

> The purpose of this doctrine is to ensure that state prisoners not only become ineligible for state relief before raising their claims in federal court, but also that they give state courts a sufficient opportunity to decide those claims before doing so. If we allowed state prisoners to obtain federal review simply by letting the time run on adequate and accessible state remedies and then rushing into the federal system, the comity interests that animate the exhaustion rule could easily be thwarted. We therefore ask in federal habeas cases not only whether an applicant has exhausted his state remedies; we also ask how he has done so. This second inquiry forms the basis for our procedural default doctrine: A habeas petitioner who has concededly exhausted his state remedies must also have properly done so by giving the State a fair "opportunity to pass upon [his claims]." Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950). When a prisoner has deprived the state courts of such an opportunity, he has procedurally defaulted his claims and is ineligible for federal habeas relief save a showing of "cause and prejudice," Murray v. Carrier, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), or "'a fundamental miscarriage of justice'" id., at 495, 106 S.Ct. 2639.

O'Sullivan v. Boerckel, 526 U.S. at 853-854 (dissent of Justice Stevens).[10] *See also* Coleman v. Thompson, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him.").

---

[10] The majority specifically noted its agreement with this portion of the dissent, stating: "We do not disagree with Justice Stevens' general description of the law of exhaustion and procedural default. Specifically, we do not disagree with his description of the interplay of these two doctrines. *Post*, at 1736-1737." O'Sullivan, 526 U.S. at 848.

Thus, for a claim to be "fairly presented," the petitioner must have presented his state court claims to the highest state court in a procedurally proper manner. Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir.1988) (*per curiam*); *see also* Green v. Cockrell, 2002 WL 1119355, *2 (N.D.Tex.2002), *quoting* Myers v. Collins, 919 F.2d 1074, 1077 (5th Cir.1990) ("[t]he exhaustion doctrine requires that the chosen avenue of post-conviction relief, whether direct or collateral, be pursued in such a manner so as not to present claims to a state's appellate courts for the first time, and only time in a discretionary review.") Only by raising his claims at each level of the state courts in a procedurally proper manner, are the state courts given "a fair opportunity to hear and consider the claims raised by an applicant before those claims are heard in federal court." Green, 2002 WL 1119355 at *2, *quoting* Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). When a *habeas* petitioner raises his claims in a procedurally proper manner, the state courts are given the requisite "... fair opportunity to hear and consider the claims." Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

Aside from the exhaustion doctrine, a federal court is also barred from reviewing a federal claim which was denied by a state court based on a state procedural rule when the procedural rule provides an independent and adequate ground for the dismissal. Ylst v. Nunnemaker, 501 U.S. 797, 111 S. Ct. 2590, 112 L.Ed.2d 394 (1991). If the last state court to reach the issue looks to its merits, then the federal courts should also review the issue on its merits. On the other hand, if the last state court to review the claim clearly and expressly states that its judgment rests on a state procedural bar, federal *habeas* review is barred. Id. at 2594.

Thus, a *habeas* claim is procedurally barred when the state has been denied the opportunity to address and correct alleged violations of state prisoner's federal rights because:

(1) the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred; or (2) a state court clearly and expressly bases its dismissal of a federal claim on an independent and adequate state procedural rule. In either instance, the petitioner is deemed to have forfeited his federal habeas claim. Bledsue v. Johnson, 188 F.3d 250, 254-55 (5th Cir. 1999), *citing* Coleman, *supra*, 501 U.S. at 735 n. 1, 111 S.Ct. 2546 (1986); O'Sullivan, 528 U.S. 838.[11]

### *Grand Jury Foreperson Discrimination Claim - Procedural Default*

In the direct appeal of his conviction and sentence to the Louisiana Third Circuit Court of Appeal, Guillory asserted seven grounds for relief, including the claim that he was denied due process and equal protection as a result of discrimination in the selection of the grand jury foreperson. The Third Circuit affirmed petitioner's convictions on January 31, 1996.[12] State v. Guillory, 670 So.2d 301 (La. App. 3d Cir. 1996). With regard to the grand jury foreperson claim, the Third Circuit found that petitioner lacked standing to assert it: "A white defendant does not have standing to raise either a due process or equal protection claim for alleged discrimination against another race in the selection of the a grand jury foreperson." Id.

After the Third Circuit affirmed his conviction and sentence, *Guillory did not seek review in the Louisiana Supreme Court.* This last fact is critical for purposes of the procedural default

---

[11]The seriousness of an alleged constitutional error does not change the rules governing procedural default. In this regard, the Supreme Court has stated:

> * * * While the nature of a constitutional claim may affect the calculation of cause and actual prejudice, it does not alter the need to make that threshold showing. We reaffirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief.

Engle v. Isaac, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572-73 (1982).

[12] Attachment to Rec. Doc. 13 at p. 360-368.

analysis, because in failing to pursue his direct appeal in the Louisiana Supreme Court, petitioner effectively defaulted on all of the claims asserted therein, including his claim concerning selection of the grand jury foreperson. As the record shows, the state courts later barred his subsequent attempts to re-urge this claim in post-conviction applications on grounds of procedural default.[13]

Following the Third Circuit's decision affirming his conviction, petitioner filed two applications for post-conviction relief in state court. As will be discussed *infra*, both of the applications were rejected on grounds of procedural default under one or more provisions of La.C.Cr.P. art 930.4, which provides as follows:

### ART. 930.4. REPETITIVE APPLICATIONS

A. Unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered.

B. If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief.

C. If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief.

D. A successive application may be dismissed if it fails to raise a new or different claim.

E. A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application.

F. If the court considers dismissing an application for failure of the petitioner to raise the claim in the proceedings leading to conviction, failure to urge the claim on appeal, or failure to include the claim in a prior application, the court shall

---

[13] *See* discussions of the procedural history *supra*, and in the Report and Recommendations issued June 20, 2001 (Rec. Docs. 36).

order the petitioner to state reasons for his failure. If the court finds that the failure was excusable, it shall consider the merits of the claim.

In his first application, filed on February 26, 1996, Guillory again asserted the claim that he was denied due process by the exclusion of minorities as grand jury forepersons.[14] The trial court denied the claim as repetitive under La.C.Cr.P. art. 930.4 – without referencing a specific subsection of the article.[15] The Louisiana Third Circuit Court of Appeal agreed, and refused to consider the issue on the merits, citing art. 930.4D. The appellate court stated,

> \* \* \* There is no error in the trial court's ruling denying Relator's claims regarding the grand jury foreman selection process and the alleged ineffectiveness of appellate counsel as repetitive. See La. Code Crim.P. art. 930.4D. These claims were reviewed on appeal and found to be meritless.

(SIee Attachment to Rec. Doc. 13 at p. 1585).

It is noted that art. 930.4D refers to successive *applications*, not successive *claims:* "A successive application may be dismissed if it fails to raise a new or different claim." Since this was Guillory's first post-conviction application, the "application" itself was not successive. However, the grand jury foreperson claim was indeed repetitive under art. 930.4 because it had been raised on appeal, and therefore was subject to a procedural bar under art. 930.4C, which states, "If the application alleges a claim which the petitioner raised in the trial court and

---

[14] Attachment to Rec. Doc. 13 at pp. 974-998. It should be noted that the March 22, 2000 Report and Recommendation erroneously stated that Guillory raised only ineffective assistance of counsel claims in his first application for post-conviction relief. (Rec. Doc. 6). That R&R was issued at a time when the record did not contain a copy of Guillory's application, but only copies of Guillory's briefs seeking writs of review. *(See* Attachment to Rec. Doc. 1, "Appeal from Denial of Evidentiary Hearing" submitted to the Third Circuit Court of Appeal on October 1, 1997 which lists only the ineffective assistance of counsel claims.) The state court record was filed subsequent to the March 2000 Report and Recommendation, and included for the first time a copy of the first application for post-conviction relief, which shows that Guillory raised the grand jury foreperson claim in addition to other claims. *See* Attachment to Rec. Doc. 13 at pps. 974-998.

[15] Id. *See* Attachment to Rec. Doc. 13, at p. 999.

inexcusably failed to pursue on appeal, the court may deny relief." Accordingly, it was proper for the Third Circuit to consider the claim repetitive under art. 930.4, and to apply a procedural bar.[16] The Louisiana Supreme Court denied review, without reasons, on October 9, 1998. State ex rel Guillory v. State, 726 So.2d 24 (La.1998).

Petitioner filed his second application for post-conviction relief on July 8, 1998, asserting nine claims, including the claim that he was denied due process and equal protection as a resul of discrimination in the selection of the grand jury foreman.[17] On July 28, 1998, the trial court denied the application as untimely filed, successive and repetitive under La.C.Cr.P. arts. 930.8 and 930.4.[18] The Third Circuit Court of Appeal agreed and denied discretionary review under art. 930.4D.[19] The Louisiana Supreme Court denied review without comment on June 25, 1999. State ex rel Guillory v. State, 99 KH 0451 (La. 1999).[20]

It is now clear, as set out in the foregoing discussion, that only once did Guillory properly present his grand jury foreperson claim to the state courts for adjudication: in his direct appeal. However, since Guillory failed to seek writs from the decision of the Third Circuit affirming his

---

[16] The court found that Guillory's claim of ineffective assistance of trial counsel had not previously been raised on appeal, and the Third Circuit therefore remanded the case to the trial court for an evidentiary hearing. On June 16, 1997, after conducting an evidentiary hearing, the trial court found that petitioner failed to meet his burden in proving ineffective assistance of counsel claims, and denied the application for post-conviction relief. Attachment to Rec. Doc. 13, pps. 1587-1590. Petitioner sought discretionary review of this ruling and on April 22, 1998 the Third Circuit denied review. State v. Guillory, 97-1363 (La. App. 3d Cir. 1998) (unpublished). See Attachment to Rec. Doc. 13, p. 1537.

[17] Attachment to Rec. Doc. 13, p. 811.

[18] Attachment to Rec. Doc. 13, p. 1690.

[19] Attachment to Rec. Doc. 13, p. 1678. The court did not find the application untimely as there is no reference to article 930.8. I note that it does not appear that the application was untimely filed as it appears to have been filed in the state trial court within three years of the date Petitioner's conviction became final.

[20] Attachment to Rec. Doc. 13, p. 1809.

conviction, he procedurally defaulted on the claim at that point. Guillory's two subsequent efforts to re-litigate the issue in his post-conviction applications were barred by the procedural default doctrine. Under these facts, and considering the applicable law, this court is barred from reviewing Guillory's grand jury foreperson claim in connection with the instant §2254 petition, because the state courts denied review based on state procedural rules which provide an independent and adequate ground for the dismissal. Ylst v. Nunnemaker, 501 U.S. 797, 111 S. Ct. 2590, 112 L.Ed.2d 394 (1991).

### *Effect of art. 930.4A*

In the order remanding this case, the Fifth Circuit specifically noted Guillory's failure to seek writs in connection with his direct appeal, but pointed out that art. 930.4A is "not a procedural bar in the traditional sense and is not a decision on the merits."[21] The court concluded that "[t]he article 930.4 bar does not preclude the district court from addressing the merits of the claims," citing Bennett v. Whitley, 41 F.3d 1581, 1583 (5th Cir. 1994).[22]

As noted above, art. 930.4A allows the state courts to deny review on the merits of any claim for post-conviction relief if the claim "was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence. . ." However, as discussed above, the state courts did not rely upon art. 930.4A to procedurally bar review of Guillory's grand jury foreperson claim in connection with Guillory's post-conviction applications. In fact, such a bar did not apply because when Guillory failed to seek writs in connection with his appeal, he abandoned any efforts to "fully litigate" the claim in question. As discussed above, the state

---

[21] Rec. Doc. 44, p. 3.

[22] Id.

courts appropriately recognized the claim as "repetitive" under art. 930.4, and, although not always explicitly identifying the subsection relied upon, it is clear that art. 930.4C applied: "If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief." Although Guillory "pursued" the claim on appeal to the Third Circuit, he "inexcusable failed to pursue" the claim when he failed to seek writs of review in the Louisiana Supreme Court.

In Bennett, the Fifth Circuit held that a Louisiana prisoner who properly exhausted his state remedies in his direct appeal, and whose subsequent attempt to re-litigate his claim in a state habeas corpus proceeding was procedurally barred under art. 930.4A, was not barred from presenting his claim in a subsequent federal habeas corpus action. The court in Bennett explained that the federal court should "look through" a state procedural bar if it simply prohibits further state review, because what is important is whether the petitioner has, at any time, fully and fairly presented his claim to the state courts in an earlier proceeding:

> There are three primer rules and a presumption behind today's ruling. First, "[w]hen a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." Ylst v. Nunnemaker, 501 U.S. 797, 801, 111 S.Ct. 2590, 2593, 115 L.Ed.2d 706 (1991). Second, if the last state court to reach the issue looks to its merits, then the federal courts are also free to review the issue on its merits. Id. Third, in determining whether to reach the merits of a petitioner's claim, the district court must look to the last state court decision. Id. To assist courts in deciding upon what grounds the last state court decision rests, the Supreme Court fashioned the following presumption: "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Id. at 803, 111 S.Ct. at 2594. The Court held that a strong showing would be required to rebut the presumption, but identified one situation in which the presumption would always be rebutted:

> The only common circumstance in which the presumption is unrealistic is that in which the later state decision rests upon a prohibition against further state review -- for example, an unexplained denial of state habeas resting in fact upon a rule ...

preventing the relitigation on state habeas of claims raised on direct appeal. In that circumstance, even though the presumption does not posit the real reason for the later denial, it does produce a result ... that is the correct one for federal habeas courts. Since a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a pre-existing procedural default, its effect upon the availability of federal habeas is nil – which is precisely the effect accorded by the "look-through" presumption." Id. at 804 n. 3, 111 S.Ct. at 2595 n. 3.

Bennett, 41 F.3d at. 1582-83.

Bennett simply applied a rule of fairness, recognizing that once a petitioner has fairly presented his claims to the state's highest court, a subsequent refusal by the state courts to review the claim *again* would not violate the doctrine of procedural default.

As noted, the case at bar is factually distinguishable from Bennett. "Bennett exhausted his remedies on direct appeal," Bennett, 41 F.3d at 1582. Here, petitioner did not exhaust his remedies on direct appeal. Petitioner never fairly presented the grand jury foreperson claim to the Louisiana Supreme Court because he abandoned his appeal after the Third Circuit affirmed his conviction and sentence. In order to properly present the issue to the highest court in Louisiana, petitioner was required to file an application for writ of review with the Louisiana Supreme Court within thirty days of the Third Circuit's judgment becoming final.[23] Petitioner did not do so, which constitutes a procedural default. Later, the state courts properly applied the procedural default doctrine to bar petitioner's subsequent attempts to reassert this issue in his two applications for post-conviction relief. Under these facts, the "look through" presumption discussed in Bennett is inapplicable.

Due to this improper procedure chosen by petitioner, the Louisiana State Court has yet to review the merits of the grand jury foreperson issue, and the time period for requesting such a

---

[23] *See* Sup.Ct.Rules, Rule 10, 8 LSA-R.S.

review has expired. Thus, this case presents an issue not presented in Bennett – can a federal court consider a constitutional claim on the merits which was not properly exhausted on direct appeal, and which was never considered by the state's highest court because subsequent attempts to re-litigate the claim were barred by the doctrine of procedural default? Using the rationale behind well established law, the answer is "no."

The exhaustion and procedural default doctrines are designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before the claims are presented to the federal courts. *See* O'Sullivan 526 U. S. at 845, 848; *see also* Magouirk v. Phillips, 144 F.3d 348, 360 (5th Cir. 1998). In Edwards v. Carpenter, 529 U.S. 446, 453, 120 S.Ct. 1587, 1592 (2000), the Supreme Court explained that comity and federalism required the petitioner to present his claim to the state court in a procedurally proper manner because just as the purposes of the exhaustion requirement would be defeated if the petitioner were able to obtain federal habeas review by letting the time run so that state remedies were no longer available:

> Those purposes would be no less frustrated were we to allow federal review to a prisoner who had *presented* his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a *"fair* 'opportunity to pass upon [his claims].'

Edwards at 1592 *citing* Coleman at 854, 119 S.Ct. 1728 (Stevens, J., dissenting)(quoting Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

Thus, for a claim to be "fairly presented," the petitioner must have presented his state court claims to the *highest state court in a procedurally proper manner*. Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir.1988) *(per curiam)*. Louisiana law also requires exhaustion of appellate

rights prior to beginning the post-conviction relief process. *See* La.C.Cr.P. art. 924.1 ("An application for post conviction relief shall not be entertained if the petitioner may appeal the conviction and sentence which he seeks to challenge, or if an appeal is pending.") The Comment to art. 924.1 states, "This article reaffirms the post appellate nature of the procedure. Post conviction relief is not designed to take the place of an appeal. The petitioner must first exhaust whatever appellate rights he has." Thus, prior to filing the post-conviction relief application, petitioner was required to follow the state court procedures, which here required him to request discretionary review by the Louisiana Supreme Court on direct appeal.[24] When he failed to do so, he failed to fairly present, via the proper procedures, the claim to the state's highest court. Thus, his claim was procedurally barred.

In sum, due to petitioner's failure to properly present the grand jury foreperson claims to the Louisiana Supreme Court, the state's highest court has not had a fair opportunity to resolve the federal constitutional claims. Further, petitioner is time-barred from seeking relief in the Louisiana courts. Accordingly, it is recommended that petitioner's grand jury foreperson claim be deemed procedurally barred.

### *Cause and Prejudice*

Where a state prisoner has defaulted on his federal claims in the state courts pursuant to a state procedural rule, he can avoid the bar of procedural default only if he can show "cause for the noncompliance" with state law and "actual prejudice resulting from the alleged constitutional violation." Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640

---

[24] *See* Sup.Ct.Rules, Rule 10, 8 LSA-R.S.

(1991), *quoting* <u>Wainwright v. Sykes</u>, 433 U.S. 74, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1972).

"Cause" for procedural default requires a showing of an objective, external impediment to compliance with the state's procedural rules:

> [W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard.

<u>Murray v. Carrier</u>, 477 U.S. at 488, 106 S.Ct. at 2645 (internal citations omitted). If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. <u>Saahir v. Collins</u>, 956 F.2d 115, 118 (5th Cir. 1992).

On October 14, 1999, the undersigned issued a memorandum order placing petitioner on notice that the grand jury foreperson claim was subject to procedural default, and affording him the opportunity to show cause and prejudice, or alternatively, that he was actually innocent of the murders.[25] On October 27, 1999, petitioner responded that the cause for his procedural default was the fact that <u>Campbell v. Louisiana</u>, 523 U.S. 392 (1998) was rendered after he had already presented the issue to the state courts and this new rule regarding standing made it possible for him to once again return to the state courts for review. As discussed above, however, <u>Campbell</u> did not announce a new rule of constitutional law, and in fact, petitioner asserted in his direct appeal a claim for denial of due process and equal protection in the method of selection of the grand jury foreperson in St. Landry Parish prior to <u>Campbell</u>. When the Louisiana Third Circuit

---

[25] Rec. Doc. 4.

found that Guillory did not have standing to assert the grand jury foreperson claim, Guillory did not seek a writ of review from the Louisiana Supreme Court, thereby allowing that court the opportunity to consider the merits of the claim. Rather Guillory ignored the Louisiana Supreme Court and filed an application for post-conviction relief (pre-Campbell) with the trial court.[26] Thus, Guillory pursued the grand jury foreperson discrimination claim regardless of the Louisiana Third Circuit's opinion that he did not have standing, and he did so in a way that prohibited the state's highest court from reviewing the merits of the claim. The subsequent ruling in Campbell clarifying that petitioner had standing to assert the grand jury foreperson claim, therefore, has no bearing on his procedural default of the claim. Accordingly, petitioner's assertion that the cause for his procedural default was the Supreme Court's ruling in Campbell is unpersuasive. Petitioner has not demonstrated cause for his procedural default.

If a petitioner fails to demonstrate cause, the court need not consider whether there is actual prejudice. Saahir v. Collins, 956 F.2d 115, 118 (5th Cir. 1992). Because petitioner has failed to establish cause for his procedural default at the state level, this court is barred from review of the claim on the merits unless petitioner shows that a miscarriage of justice will result.

### *Miscarriage of Justice*

A petitioner may alternatively avoid a procedural default by showing that he is actually innocent and that failure to review his federal claim would result in a fundamental miscarriage of justice. Gray v. Netherland, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime of conviction. Corwin v. Johnson, 150 F.3d 467, 473 (5th Cir. 1998); Ward v.

---

[26] *See* Attachment to Rec. Doc. 13 at pps. 974-979.

Cain, 53 F.3d 106, 108 (5th Cir. 1995). The petitioner must make a "colorable showing of factual innocence." Callins v. Johnson, 89 F.3d 210, 213 (5th Cir.), *cert. denied,*117 S.Ct. 530, 136 L.Ed.2d 416 (1996), *quoting* McClesky v. Zant, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993).

In the instant case, petitioner has not alleged or shown that he is actually innocent of the murders. Accordingly, there has been no showing that application of the procedural bar in this case will result in a fundamental miscarriage of justice. Thus, it is recommended that petitioner's grand jury foreperson clams be denied and dismissed with prejudice.

## *Conclusion*

For the foregoing reasons, **IT IS RECOMMENDED** that petitioner's claims be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See**

**Douglass v. United Services Automobile Association**, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on June 21, 2005.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)